**Clifford W. KEELER and Lola M. Keeler, Plaintiffs-Appellees,**

v.

**Lyle CARPENTER and Mortgage Finance, Inc., Defendants-Appellants.**

**No. 681–70.**

United States Court of Appeals, Tenth Circuit.

Oct. 27, 1971.

G. E. Oppeneer, Denver, Colo. (Grant, Shafroth, Toll & McHendrie, and Frederick T. Berhenke, Denver, Colo., with him on the brief), for defendants-appellants.

Donald K. Bain, Denver, Colo. (Holme, Roberts & Owen, and D. Craig Lewis, Denver, Colo., with him on the brief), for plaintiffs-appellees.

Before SETH and DOYLE, Circuit Judges, and KERR, District Judge.

SETH, Circuit Judge.

This damage action was brought by appellees Keeler against the individual defendant-appellant Carpenter and the corporate defendant. The defendants were mortgage brokers, and the plain-

tiffs entered into an agreement with them. The cause of action on which the case was submitted to the jury alleged the defendants to be negligent in their performance of their duties. The jury verdict awarded damages to the plaintiffs and the defendants have taken this appeal.

The question on appeal is whether the trial court committed error in its denial of defendants' motions for a directed verdict. The motions asserted that no negligence had been established and there was no evidence that the acts or inaction alleged to be negligent were the proximate cause of the plaintiffs' damages.

The matter of the sufficiency of the evidence to warrant submission of issues or of a case to the jury is determined by federal rule. The standard to be so applied was described by this court in Kiner v. Northcutt, 424 F.2d 222 (10th Cir.), and prior cases. We there said that if the proof is so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, the motion should be granted. We cannot say on this appeal that the evidence was such as to permit the granting of the motion, and thus the trial court was correct in its ruling.

The record shows that plaintiffs were part owners of a ranch, and defendant Carpenter is president of defendant, Mortgage Finance, Inc., a loan brokerage located in Denver, Colorado. The plaintiffs applied to defendants for a mortgage loan and after appraising the ranch, appellant Carpenter entered into a brokerage agreement with the Keelers in Colorado. The agreement between the parties was that the appellants would attempt to find a lender for the Keelers, in return for a stipulated commission. After several months, appellant Carpenter contacted the Keelers, informing them that he had found a prospective lender, one Joseph Stein. According to Carpenter's testimony at trial, Stein, whom Carpenter had never met, contacted him at his Denver office,

representing himself to be an employee of a Chicago loan brokerage. At a subsequent meeting with Stein, again taking place in appellant Carpenter's Denver office, Stein indicated that his company was interested in making the loan to the Keelers. Carpenter in Stein's presence then telephoned the Keelers at their Kansas home so that Mr. Keeler might discuss the loan directly with Stein. During the course of their conversation Stein informed Keeler that before he could proceed on Keeler's application for a loan, he would require a "deposit" from Keeler of $5,550.00. Some days later the Keelers delivered a check to Carpenter payable to defendant company in the amount of $5,550.00 as such deposit. After deducting some expenses from the proceeds of this check appellants paid the balance to Stein. Stein failed to procure a loan for the Keelers, and has not been seen or heard from since.

While the Keelers were still waiting to hear from Stein, appellant Carpenter was contacted by one Roger Camp, who also held himself out as a loan broker. Carpenter had never known Camp prior to this time. Camp further represented himself as an agent of Republic National Mortgage Corporation of Dallas, Texas. Carpenter had no knowledge of such company at the time. Camp told Carpenter that the Dallas company was interested in lending to the Keelers. Some days later Carpenter accompanied Keeler to Republic's Dallas office to negotiate the loan. In Dallas, after extended discussions with Carpenter, Republic agreed to lend Keeler $240,000.00 but drew the agreement in such a way that it was not obligated to perform for several months. Republic in Carpenter's presence required of Keeler an advance fee of $19,200.00, and a check was given for this amount. It was Keeler's design to use the commitment from Republic to obtain interim financing while waiting for Republic to perform on the agreement. On returning to Kansas, Keeler found that his local bank would not give him a loan on the Republic commitment,

and he stopped payment on the check to Republic.

Shortly thereafter, Mr. Keeler was again contacted by appellant Carpenter. According to Carpenter's testimony, Mr. Curry from Republic's Dallas office called to advise him that Keeler had stopped payment on his check. Roger Camp reappeared in Carpenter's Denver office some time after this. Carpenter at this time called Keeler in Kansas and told him that Camp wanted to talk with him about a loan. Keeler drove to Denver, where he met Carpenter and Camp. According to Keeler's testimony, Camp talked of obtaining the loan in California, but told Keeler he would need an advance deposit of $4,995.00, and that Keeler should execute a note for the balance of the $19,200.00 fee. The next day Keeler returned to Denver, and according to his own testimony he met with Carpenter and Camp at a Denver motel, where he gave Camp a cashier's check for $4,995.00, and the note to Carpenter. Camp has not been heard from since that time. The record shows that the Republic National Mortgage Company at Dallas was organized about a month before the parties visited it to negotiate the loan commitment. The record also shows that its charter was forfeited in a court proceeding before the date the commitment was to be effective.

The record demonstrates beyond doubt the negligence of defendants. These facts which so demonstrate this negligence, as the trial court indicated in its ruling on the motions, compel the conclusion that the failure was the proximate cause of plaintiffs' loss. The individual defendant participated in each transaction and negotiations, and permitted the payment or himself handled the funds. The proof was clear that none were returned and that nothing was again heard of the individuals to whom the money was paid. No valid loan commitment was ever secured. This was a demonstration of sufficient causal connection between the negligence and the damages to withstand the motions.

In United States v. Gravelle, 407 F.2d 964 (10th Cir.), we said that " * * * [o]rdinarily, proof of causation must rise higher than the presentation of mere alternative possibilities and must reach the level of a reasonable probability." This standard was met in the case before us.

Thus on the motion for directed verdict under Kiner v. Northcutt, 424 F.2d 222 (10th Cir.), United States v. Oklahoma City Retailers Ass'n, 331 F.2d 328 (10th Cir.), and Mutual Life Ins. Co. of New York v. Bohlman, 328 F.2d 289 (10th Cir.), we must hold that the "proof is not all one way" on the issue of proximate cause, and the trial court was correct.

Affirmed.