Barbara A. WELLS, Plaintiff-Appellant,

v.

CONNECTICUT GENERAL LIFE IN- SURANCE COMPANY, a Connecticut corporation, Defendant-Appellee.

No. 72-1112.

United States Court of Appeals, Tenth Circuit.

Dec. 1, 1972.

Rehearing Denied Jan. 8, 1973.

Hugh J. McClearn, Denver, Colo., for plaintiff-appellant.

Arthur E. Otten, Jr., Denver, Colo. (Richard W. Breithaupt, Denver, Colo., on the brief), for defendant-appellee.

Before BARNES,* HILL and HOLLO-WAY, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Colorado directing a jury verdict for the appellee, Connecticut General Life Insurance Company (Connecticut General). The trial court determined at the close of the plaintiff's evidence that no contract of insurance existed which covered the life of the deceased, Donald W. Wells.

In early 1970, Petro Lewis Corporation determined that due to internal expansion and diversification, it would be desirable to expand its group insurance coverage to include all of its operations and to increase employee benefits. Connecticut General had a group insurance policy with Petro Lewis at that time, and it was contacted by management employees of Petro Lewis concerning the expanded coverage. A desired plan of coverage was discussed, and after an extended period of negotiations with representatives of Connecticut General, an oral agreement was apparently reached; Petro Lewis executed an application for group disability, health and life insurance on August 24, 1970, and submitted it to Connecticut General together with an $8,000 check for insurance coverage commencing August 25, 1970. The check was subsequently cashed by the insurance company.

In negotiating the details of the proposed coverage prior to execution of the application, the subject of employee eligibility was discussed. The previous group insurance contract provided for a 30-day employee eligibility period. Under this provision, the employee would not be covered for any benefits under the policy until he had worked for Petro Lewis for 30 days. It was Petro Lewis' desire to write the employee eligibility provision under the new policy in such a way that it would not be liable for coverage on transient, short-term employees, but would, at the same time, provide coverage to those who were apparently successful employees without penalizing them for their having come to work for Petro Lewis, thereby having lost other insurance coverage. A 60-day employee eligibility provision with retroactive coverage to the first day of employment was ultimately devised. Testimony in the record from the Petro Lewis representative and from one of the Connecticut General representatives was that this unique eligibility applied only to medical coverage. There was, however, apparently nothing said relative to employee eligibility provisions for the other specific coverages: death, disability, and accidental death.

A letter was prepared by Petro Lewis with some assistance from Connecticut General and was sent to Petro Lewis employees announcing the new group insurance coverage and giving a general description of the coverage. A statement was included in that letter that, "New employees will be eligible after 60 days of satisfactory employment, and the employee will then be considered to have been covered from the date of employment."

Donald W. Wells, the deceased husband of the appellant, became em-

* Of the Ninth Circuit, sitting by designation.

ployed by Petro Lewis on October 8, 1970, and executed an enrollment card for coverage under the new group insurance policy; he designated the appellant as beneficiary. On October 19, 1970, Wells died of an accidental drug overdose. Following notification of the death, the Connecticut General representatives met with Petro Lewis representatives. The Petro Lewis representatives indicated it was their understanding of the coverage to be provided that Wells would be covered from the first day of his employment for death benefits, and the 60-day retroactive coverage was meant to apply only to the medical payment benefits. One of the Connecticut General representatives also indicated he felt Wells was covered under the policy. Connecticut General ultimately denied coverage of Wells' death on the basis that the 60-day employee eligibility requirement applied to all benefits, and this had not been met at the time of Wells' death. The final policy was not issued at the time of Wells' death, but was ultimately issued on January 12, 1971. The rights of the parties are therefore governed by the terms of the orally agreed temporary insurance, if such insurance was in existence at the time of Wells' death.

The application for group insurance which was executed by Petro Lewis and submitted to Connecticut General contained a clause that the group insurance would take effect "provided that this Application is accepted at the Home Office." The trial court, in ordering the directed verdict, felt compelled by the decisions in Machinery Center, Inc. v. Anchor National Life Insurance Company, 434 F.2d 1 (10th Cir. 1970), and Killpack v. National Old Line Insurance Company, 229 F.2d 851 (10th Cir. 1956), to give effect to the provision in the application requiring acceptance by the insurer before coverage was extended. Those cases, however, involved applications for individual life insurance poli-

cies. There, the insurance company still had to determine whether to accept the risk based on an assessment of the applicant's insurability. Here, insurance was extended to the individuals when they, as employees, became eligible under the terms of the group contract. Their individual eligibility was determined with reference to their employment and when they executed their enrollment authorizing the payroll deduction. The acceptance referred to in the application related to acceptance of the details of the proposed insurance coverage, most of which had been previously agreed to, rather than an acceptance of risk. This case arose only as a result of the failure to provide for this contingency in express terms, although both parties had definite, but divergent, understandings as to employee eligibility for death benefits.

There being no requirement of acceptance as prerequisite to coverage in this case, our review will be to determine whether facts were presented which would tend to support appellant's position that the temporary insurance extended death benefits coverage from the first day of employment. On appeal, this court views the evidence and the inferences to be drawn therefrom in the light most favorable to the party against whom the motion for a directed verdict is made.[1]

Testimony from Petro Lewis' vice president of finance and administration, Mr. Allen, was that the 60-day retroactive coverage was devised in negotiations prior to the submission of the application. He further testified the discussions of employee eligibility related only to medical claims, and that employee eligibility was never discussed relative to life insurance or long term disability coverage. Allen also testified his initial reaction was that Wells' death was covered under the group policy. Testimony of a Connecticut General agent who par-

---

1. Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (10th Cir. 1969); Gulf Ins. Co. v. Kolob Corp., 404 F.2d 115 (10th Cir. 1968); Peter Kiewit Sons Co. v. Clayton, 366 F.2d 551 (10th Cir. 1966).

ticipated in the negotiations was that at the time he heard of the death, he felt it was covered under the policy. Testimony of Connecticut General's account supervisor of group sales, who also participated in the negotiations, was that the 60-day waiting period with the retroactive feature was discussed only in relation to the medical coverage, and that there were no discussions concerning any eligibility period for life and long-term disability coverage. Further weakness in the application of the retroactive feature to life and disability coverage was pointed out in this witness' testimony that if an individual died or became disabled during the 60-day period there was no way to assume he would have remained employed for the full 60-day period.

Recovery on the basis of an insurance company's interim liability pending issuance of the policy has been allowed in Colorado.[2] The resolution of whether there was an insurance contract in existence must be determined in accordance with state law.[3] However, the sufficiency of evidence to warrant the submission of a case to the jury is determined by the federal rule that the motion for directed verdict should be granted only if the overwhelmingly preponderant proof is so in favor of the movant as to permit no other rational conclusion.[4]

Having reviewed the evidence presented by the appellant, we must conclude that sufficient evidence was presented to show the overwhelmingly preponderant proof was not so in favor of appellee as to permit no other rational conclusion. The motion for directed verdict should have been denied. The order by the trial court directing a verdict is accordingly set aside, and the cause is remanded for further proceedings consistent with this opinion.

2. Farmers New World Life Ins. Co. v. Crites, 487 P.2d 608 (Colo.1971).

3. *See* Machinery Center, Inc. v. Anchor Nat'l Life Ins. Co., 434 F.2d 1 (10th Cir. 1970).

4. Keeler v. Carpenter, 449 F.2d 437 (10th Cir. 1971); Kiner v. Northcutt, 424 F. 2d 222 (10th Cir. 1970).