**FIREMAN'S FUND INSURANCE CO., Appellant in No. 75-2405**

v.

**VIDEFREEZE CORPORATION and
DAVID E. CHINNERY DEVELOPMENT CORP., Appellants
in No. 75-2406**

Nos. 75-2405/6

United States Court of Appeals

Third Circuit

Argued April 29, 1976

Filed August 25, 1976

RICHARD E. GRUNERT, ESQ. (GRUNERT, STOUT, HYMES & MAYER), Charlotte Amalie, St. Thomas, V.I., *for appellants in 75-2406, and as cross-appellees in 75-2405*

C. JAMES JESSEE, JR., ESQ., Atlanta Georgia, and THOMAS ALKON, ESQ. (ISHERWOOD, COLIANNI, ALKON & BARNARD), Christiansted, St. Croix, V.I., *for appellee in 75-2406, and as cross-appellant in 75-2405*

Before VAN DUSEN, ADAMS and ROSENN, *Circuit Judges*

### OPINION OF THE COURT

ROSENN, *Circuit Judge*

This lawsuit has its origin in the behavior and power of nature, rather than in the conduct of the parties. A sudden rockslide occurred at Haypiece Hill on St. Thomas, Virgin Islands between midnight and 8:00 o'clock A.M. on December 8, 1974. David E. Chinnery Development Corporation ("Chinnery") owned two buildings at the foot of Haypiece Hill which it leased to Videfreeze Corporation ("Videfreeze"), one for storage of frozen foods and the other for an office. The falling rocks penetrated the building used as a warehouse and buried large quantities of food. The office building, too, was severely damaged.

Prior to the rockslide, Fireman's Fund Insurance Company ("Fireman's Fund") had issued fire insurance policies to Videfreeze covering business interruption and loss to its merchandise and to Chinnery against fire and rental loss on its buildings. The four fire insurance policies contained an "Earthquake Insurance Assumption Endorsement," providing coverage for "direct loss by earthquake."

It is undisputed that both insureds sustained losses as a result of the rockslide. Videfreeze subsequently filed Proofs of Loss, and Chinnery submitted a cost estimate of repairs to its buildings, both companies attributing their losses directly to an earthquake which they claimed had caused the rockslide. Fireman's Fund denied that the slide was caused by an earthquake and took the position that the losses were therefore not covered by the fire insurance policies. After more than a year had passed in which the claims remained in dispute, Fireman's Fund, as plaintiff, instituted this declaratory judgment action against the insureds under 1A

V.I.C. 1261 (1967)[1] in the District Court of the Virgin Islands.[2]

Fireman's Fund sought a determination of "the respective rights and liabilities of the Plaintiff and Defendants as a result of the rock slide of December 8, 1974," In response, the defendants asserted several counterclaims in which they alleged that their losses were caused by the earthquake and hence covered by the insurance contracts. They sought a total of at least $761,093.25 in compensatory damages plus interest and reasonable attorneys' fees. Videfreeze further claimed punitive damages of $500,000 for Fireman's Fund's failure timely to pay the claims.

All parties stipulated that the trial would be bifurcated, the "issue of insurance coverage being first decided." The first phase of the trial resulted in the jury's finding, by answer to an interrogatory, that the defendants had sustained "a direct loss by earthquake." Thereafter, the district court granted Fireman's Fund's motion for judgment notwithstanding the verdict.

## I. Factual Background

As a preliminary to our analysis of the entry of judgment notwithstanding the verdict, a brief outline of the evidence is essential. The district court opinion contains a more detailed rendition of the facts. See Fireman's Fund Insurance Co. v. Videfreeze Corp., 68 F.R.D. 484 (D.V.I. 1975).

Haypiece Hill consists of volcanic rock which occurs primarily in series of long columns pointed downward. The rock was quarried for many years, and the explosives used

[1] Section 1261 provides in pertinent part:
> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for.

[2] Jurisdiction of the district court is conferred by 48 U.S.C. § 1612 (1970).

in the quarrying operations produced fractures in addition to those which occur naturally in the rock. Water flows through the cracks, and has for hundreds of years, weathering it and forming a light-colored sediment.

An extraordinary amount of rain fell in St. Thomas during October and November, 1974, totalling thirty-two inches. In the opinion of the insurance company's experts, the excessive water which penetrated the rock dislodged the side of the cliff. The insureds, however, adduced evidence that less than an inch of rain fell between November 28 and December 8, the date of the alleged earthquake.

The theory of the insureds was that a small earthquake had triggered the slide. They produced four witnesses who testified that they had felt a tremor, and three of the four were able to place its occurrence at about 1:00 A.M. on the morning of December 8. Although it is undisputed that no earthquake was recorded on the nearest seismograph at Cayey, Puerto Rico, an earthquake of magnitude 2 to 2.5 on the Richter scale, occurring in St. Thomas, would probably escape detection in Cayey.

The insurance company's experts testified that an earthquake small enough to be unrecorded at Cayey was too small to bring down the cliff at Haypiece Hill. They based their conclusion, in part, on the descriptive ratings of the Mercalli scale. That scale, which measures intensity, is an attempt to systematize and quantify observable effects of earthquakes of different intensities. On the Mercalli scale, landslides are first mentioned at intensity VII.

A very rough correlation can be made between magnitude 2 to 2.5 on the Richter scale and intensity II on the Mercalli scale. An earthquake of intensity II in St. Thomas, therefore, might not be recorded in Cayey, but one of intensity VII would undoubtedly be detected. Although earth masses are generally not dislodged until intensity VII is reached, one of the insureds' witnesses testified that this

observation pertains to stable or semi-stable masses, not highly unstable ones.

The testimony of the insureds' experts was that water saturation did not bring down the rocks on Haypiece Hill. A seismologist testified that the weakening of the cliff by quarrying and water absorption rendered it highly susceptible to toppling by a small tremor. He therefore opined that an earthquake which was undetectable at Cayey had nonetheless triggered the rockslide.

The jury returned a verdict in favor of the insureds on the sole issue of insurance coverage. The judge, "firmly convinced that a grave error has been made and a serious injustice will result", entered judgment in favor of the insurance company notwithstanding the verdict. 68 F.R.D. at 494. He also conditionally granted plaintiff's alternative motion for a new trial. Defendants appealed both actions by the trial judge. The plaintiff, Fireman's Fund, cross-appealed the district judge's decision to place the burden of proof on it and challenged the jury's instructions to that effect. We reverse the judgment notwithstanding the verdict and affirm the district court's order granting a new trial but for reasons other than those stated by it.

## II. Burden of Proof

The starting point of our analysis must be an inquiry into the often elusive issue as to which party in a declaratory judgment bears the burden of proof. The judge, for policy reasons, decided to place the burden on the insurance company to prove that something other than an earthquake caused the insured's loss. Although the question is close, we are convinced that the facts and pleadings of this particular case demand that the insureds shoulder the burden of proof of coverage.

■■ Although Fireman's Fund sued under the federal Declaratory Judgments Act, 28 U.S.C. § 2201 (1970), as

well as under its Virgin Islands counterpart, we note that there is some debate whether the federal statute applies in the District Court of the Virgin Islands.[2a] In any event, Virgin Islands law would govern the position of the burden of proof as that issue is substantive, not procedural. *Palmer v. Homan*, 318 U.S. 109, 117 (1943); *Liberty Mutual Insurance Co. v. Sweeney*, 216 F.2d 209, 211 (3d Cir. 1954). The rule of the forum, here the Virgin Islands, would govern even if the federal statute were applicable.

1 V.I.C. § 4 (1967) provides:

The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

We are unable to discover any cases brought under the Virgin Islands Declaratory Judgments Act in which the position of the burden of proof is discussed. Thus, we will be guided by our distillation of the general law on this issue.

The groundbreaking case is *Traveler's Insurance Company v. Greenough*, 190 A. 129 (N.H. 1937), which was decided under New Hampshire's own declaratory judgment statute. There the New Hampshire Supreme Court refused to displace the burden of proof of coverage from its normal location on the insured, despite the reversed positions of the parties in the action. The court emphasized that the hallmark of the question of the burden of proof is flexibility and quoted from IX Wigmore on Evidence § 2486 to the

---

[2a] Fed. R. Civ. P. 57, with its reference to 28 U.S.C. § 2201, applies to the District Court of the Virgin Islands under 48 U.S.C. § 1615. However, section 2201 by terms is applicable in "any court of the United States," which is defined in 28 U.S.C. § 451 in such a way. as not necessarily to include the District Court of the Virgin Islands. See *Government of Virgin Islands v. Gereau*, 502 F.2d 914, 931 (3d Cir. 1974), cert. denied, 420 U.S. 909 (1975); *United States v. Lewis*, 456 F.2d 404, 408 (3d Cir. 1972); *Ottley v. DeJongh*, 149 F.Supp. 75 (D.V.I. 1957).

effect that any rules governing the burden of proof rest "for their ultimate basis upon broad reasons of experience and fairness."

Declaratory judgment actions arising after Greenough have, in the main, been characterized by such flexibility. "[T]he question depends often on the condition of the pleadings and the character of the issues when the question arises." E. Borchard, Declaratory Judgments 404–405 (2d ed. 1941). The leading case which expounded these guiding principles is Reliance Life Insurance Company v. Burgess, 112 F.2d 234 (8th Cir.), cert. denied, 311 U.S. 699 (1940).

In Burgess, the insurance company was made to bear the burden of proof but not merely because it happened to be the plaintiff in the declaratory judgment action. Rather, the court considered that the company disputed coverage by asserting an affirmative defense of exclusion and that the insured neither asked for affirmative relief nor put forth a cause of action. In that posture, the insurer properly was required to prove that the loss was due to an excluded cause.

The many cases which have looked to Burgess have been influenced by a number of factors in their examination of the posture of the pleadings and the formulation of the issues. Among them are: (1) whether the plaintiff objected to assuming the burden of proof; (2) which party asserted the affirmative of the issue; (3) which party would lose in the absence of any evidence on the issue; (4) what sort of relief is sought. See Annot., 23 A.L.R.2d 1243 (1952).

Courts understandably balk at imposing the burden of proof on unsuspecting defendants after the plaintiff in a declaratory judgment action has voluntarily assumed the burden of proof and has given no prior notice of its claim that the defendant should bear the burden. Liberty Mutual Insurance Company v. Sweeney, 216 F.2d 209, 211 (3d Cir.

1954).[3] In the instant case, Fireman's Fund has adamantly maintained that the defendants should bear the burden of proof, as evidenced by its proposed pre-trial order. Hence, this action cannot be controlled by those cases in which an effective waiver of the burden of proof issue has been found.

Furthermore, the issue of coverage is put forth affirmatively by the insureds in their counterclaims. When the parties' positions are not reversed, the insured is typically charged with proving his loss was covered under the insurance contract. 21 Appleman, Insurance § 12093 at 10. "That the loss was caused within the [insurer's] promise is the essence of the [insured's] case." 3A Corbin on Contracts § 751 at 476 (1964).

The insureds cite us to cases from the area of personal disability insurance to bolster their contention that the insurance company should bear the burden of proof. That line of cases frequently assigns the burden to the insurer, on the ground that it is asserting the affirmative of the issue that the insured is capable of working or engaging in business and is no longer entitled to disability payments. See, e.g., New York Life v. Stoner, supra, 109 F.2d at 876. Thus, these cases support our conclusion that the party with the affirmative of an issue may justly be required to bear the burden of proving it.

An additional consideration to which many courts advert in declaratory judgment proceedings is which party stands to lose in default of evidence. Royal Indemnity Co. v. Wingate, 353 F.Supp. 1002, 1004 (D. Md.), aff'd 487 F.2d 1398 (4th Cir. 1972); Preferred Accident Insurance Co. v. Grasso, 186 F.2d 987, 991 (2d Cir. 1951); Philip A. Hunt

---

[3] See also Pacific Portland Cement Company v. Food Machinery & Chemical Corporation, 178 F.2d 541 (9th Cir. 1949); Bauer v. Clark, 161 F.2d 397, 401 (7th Cir. 1947), cert. denied, 332 U.S. 839 (1947); New York Life Insurance Company v. Stoner, 109 F.2d 874, 876 (8th Cir. 1940), rev'd on other grounds, 311 U.S. 464 (1940). Hartford Accident & Indemnity Co. v. Lougee, 196 A.2d 67 (N.H. 1938).

Co. v. Mallinckrodt Chemical Works, 72 F.Supp. 865, 873 (E.D. N.Y. 1947), aff'd 177 F.2d 583 (2d Cir. 1949); 20 Appleman, Insurance § 11376 at 198 (1963). An analysis of the foregoing cases reveals that this approach actually depends upon which party asserts the affirmative of the issues. In the instant case, the insureds, although nominally the defendants, were affirmatively asserting coverage under the policies and risked an adverse judgment on their counterclaims for damages if they adduced no evidence of coverage.

 When, as here, the insurance company seeks only a declaration of non-liability and the insured asserts coverage under the policies with the company and a counterclaim for money damages, the insured is in reality seeking recovery under the policy and the insurer is denying the liability. Even though the insurer has initiated this declaratory judgment action and is titularly the plaintiff, we adhere to the fundamental rule that the risk of non-persuasion "rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action." Reliance Life Insurance Co. v. Burgess, supra, 112 F.2d at 238.

We thus place the burden of proof, or the risk of non-persuasion, where it would ordinarily rest under the Anglo-American system of jurisprudence—on the insureds.[4] The

---

[4] Moore is often cited as authority for placing the burden of proof on the insurer as plaintiff in a declaratory judgment action, at least as to the prima facie elements of its claim. 6A Moore's Federal Practice ¶ 57.31[2] at 57-268 (1975). However, his comment disapproving the Greenough case for placing the burden of proof on the insured must be read carefully. He states that the result is "unwise in its own context", that is, that of an insurer seeking to avoid defense of a suit arising out of an automobile accident. In such a case the insurance company "seeks an advanced determination of its liabilities, and the injured third party is forced to litigate the coverage issue before it has established its claim against the insured." Clearly, we are here faced with an entirely different situation in which the equities dictate a different result—there are no injured third parties, there is no litigation awaiting the outcome of this case, and since the issue of coverage has already been joined between the insureds and the insurer by the filing of proofs of loss by the insureds, there is no unfair prematurity.

burden of proof which usually accompanies the affirmative of the issue of coverage should not be shifted merely due to the form of the action. As Judge Clark stated in Grasso, supra, "[i]t would seem rather anomalous that so important a matter [as the burden of proof] should depend on the chance of who first sues and the outstanding authority in the field [Professor Borchard] argues against such a result." 186 F.2d at 991. See also Stop & Shop, Inc. v. Ganem, 200 N.E.2d 248, 252 (Mass. 1964). We therefore hold that it was error to have imposed the burden of proof in this case on the insurer.

### III. *Judgment Notwithstanding the Verdict*

■ The district court entered judgment in favor of Fireman's Fund on whom it had placed the burden of proving that the losses were not covered by the insurance policy. Either directing a verdict or entering a judgment notwithstanding the verdict[5] for the party having the burden of proof is rare, reserved for extreme circumstances. Wilson v. United States, 530 F.2d 772, 777 (8th Cir. 1976); Service Auto Supply Co. of P.R. v. Harte & Co., 533 F.2d 23, 24–25 (1st Cir. 1976); Polhemus v. Water Island, 252 F.2d 924, 928 (3d Cir. 1958).

The standards to be applied vary according to whether the movant has the burden of proof.

[T]hough a motion for directed verdict in favor of the proponent of an issue is cast in the same form as when made by the defending party, it requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect. He must be able to say only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding.

---

[5] The standards governing both are identical. Neville Chemical Co. v. Union Carbide Corp., 422 F.2d 1205 (3d Cir. 1970).

Mihalchak v. American Dredging Co., 266 F.2d 875, 877 (3d Cir.), cert. denied, 361 U.S. 901 (1959). Arkwright Mutual Ins. Co. v. Phila. Electric Co., 427 F.2d 1273, 1275 (3d Cir. 1970). See also Gatenby v. Altoona Aviation Corp., 407 F.2d 443, 445 (3d Cir. 1968); IX Wigmore on Evidence § 2495 at 306 (3d ed. 1940).

Other courts are agreed that the proponent who moves for a directed verdict or a judgment notwithstanding the verdict must meet a strict test. The United States Court of Appeals for the Tenth Circuit has permitted the grant of a motion for a directed verdict "only if the overwhelming preponderant proof is so in favor of the movant as to permit no other rational conclusion." Wells v. Connecticut General Life Insurance Co., 469 F.2d 1231, 1234 (10th Cir. 1973). The movant who has the burden of proof must have established his case "by testimony that the jury is not at liberty to disbelieve" according to a recent decision from the First Circuit. Service Auto Supply Co. of P.R. v. Harte & Co., supra, 533 F.2d at 25. It is not sufficient that the facts be undisputed; there must also be no sufficient ground for inconsistent inferences to be drawn therefrom. Arkwright Mutual Insurance Co. v. Philadelphia Electric Co., supra, 427 F.2d at 1275; Jopek v. N.Y. Cent. R.R. Co., 363 F.2d 778, 783 (3d Cir. 1965); 5A Moore's Federal Procedure ¶ 60.02[1] at 2319 (1975).

The trial judge in the instant case, rather than looking to the standards governing the entry of a judgment notwithstanding the verdict in favor of the proponent, consulted Denneny v. Siegel, 407 F.2d 433 (3d Cir. 1969), in which the movant did not bear the burden of proof. Following the rule of law he derived from Denneny, the judge considered only the sufficiency of the evidence of the insureds and found it lacking.

He formulated and applied the test that "[t]here must be sufficient facts for the jury to say reasonably that the

preponderance favors liability." Memorandum opinion at 13. By his own placement of the burden of proof on the insurance company, however, the judge was obliged to evaluate its evidence and to deny it a judgment notwithstanding the verdict unless the evidence of non-liability was compelling. If we accept the judge's decision as to which party had the burden of proof, we must conclude that he erred in his choice of standards for examining the record upon the proponent's motion for a judgment notwithstanding the verdict.

The error which marred the judge's evaluation of the state of the evidence may not be reversible error after all if the insureds properly should have borne the burden of proof on the issue of coverage. The test chosen by the district judge is applicable to motions for judgment notwithstanding the verdict by parties whose opponents bear the burden of proof. As we have previously indicated, we are persuaded that indeed Videfreeze and Chinnery, the insureds, should have been charged with the burden of proving coverage of their losses under the insurance policies. Thus, the judge's decision to evaluate their evidence for sufficiency to support the verdict, upon a motion by the insurance company, would be correct. Hourston v. Harvlan, Inc., 457 F.2d 1105, 1108 (3d Cir. 1972); Denneny v. Siegel, supra, 407 F.2d at 439.

The trial judge, in his review of the evidence, and this Court, in its own appellate review, must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference. Continental Ore Co. v. Union Carbide and Carbon Corp., 370 U.S. 690, 696 (1962); Dovberg v. Dow Chemical Co., 353 F.2d 963, 968 (3d Cir. 1965), cert. denied, 384 U.S. 907 (1966). At least two factors are outside the perimeters of either court's review—the credibility of the evidence and the weight of it.

395

Brady v. Southern R. Co., 320 U.S. 476, 479–80 (1943); Wylie v. Ford Motor Co., 502 F.2d 1292, 1294 (10th Cir. 1974); Burchill v. Kearney-National, 468 F.2d 384 (3d Cir. 1972).

█ Moreover, conflicting evidence which could reasonably lead to inconsistent conclusions will not justify a judgment notwithstanding the verdict or a directed verdict. Giangerelli v. Gregory, No. 76-1006, opinion at 8 (3d Cir. June 1976); 5A Moore's Federal Practice ¶ 50.07 at 2356 (1975). It is the function of the trier of fact alone, the jury in this instance, to evaluate contradictory evidence and to draw inferences therefrom. Continental Ore Co., supra, 370 U.S. at 700–701.

The trial judge in the instant case invaded forbidden territory from time to time in his review of the evidence although he articulated an understanding of the constraints on his review. In the first place, he apparently discounted the testimony of three of defendants' four lay witnesses, noting that one was "thoroughly discredited" and that the other two, husband and wife, were related to a shareholder of Chinnery and had business connections with Videfreeze. We must look behind his disavowal of any intention to "pass on the credibility of the witnesses" because we are convinced that he did just that, albeit unintentionally.

Further, the judge attempted to determine the preponderance of the evidence. Apparently, he thought that the verdict should not be allowed to stand unless he could conclude that the jury could "say reasonably that the preponderance favors liability." Memorandum opinion at 13. His appraisal of the evidence was in terms of "tipping the scales" (at 16). We have said that a trial judge, when deciding on a motion for a directed verdict or for judgment notwithstanding the verdict, should not determine whether the evidence "preponderates" but must confine himself to ascertaining whether the party against whom the motion is

made adduced sufficient evidence to create a jury issue. Hourston v. Harvlan, Inc., supra. See also Wylie v. Ford Motor Co., supra, 502 F.2d at 1294.

Finally, our own reading of the record in this case convinces us that there was sufficient evidence adduced to make a judgment notwithstanding the verdict improper. In the words of Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir. 1969), we cannot say (as a matter of law) that the record is deficient of that "minimum quantum of evidence from which a jury might reasonably afford relief" to the insureds.

The absence of any record on the nearest seismometer at Cayey, Puerto Rico, of an earthquake at St. Thomas is not necessarily conclusive that none occurred. Although an earthquake of intensity III and above on the Mercalli Intensity scale in St. Thomas would have been detected, a quake of 2 or 2.5 on the Richter scale for measuring earthquake magnitude, or approximately intensity II on the Mercalli scale, could occur in St. Thomas and escape detection in Cayey. Thus, the trial judge, albeit reluctantly, concluded "it is conceivable that a jury could properly find from the testimony of the defendants' four lay witnesses adequate proof of the existence of an earthquake of some size." Memorandum opinion at 15.

■ In order to recover, however, the insureds were further obliged to establish the earthquake as the probable cause of the rockslide. The judge, appropriately stating that he drew all inferences in favor of the insureds, nonetheless decided that "to say that the earthquake was the cause of the losses suffered by the defendants, one must resort to the purest speculation, conjecture and surmise." Memorandum opinion at 15. We disagree.

To be sure, the Mercalli scale, which describes the perceived effects of earthquakes of varying intensity, first mentions landslides at intensity VII whereas an undetect-

able quake on St. Thomas would necessarily be below intensity III. The uncontroverted testimony of defendants' expert seismologist, Dr. Murphy, however, was that the Mercalli description referred to reasonably stable or semi-stable earth masses, not to highly unstable ones as the evidence showed Haypiece Hill to be. Thus, the Mercalli scale intensity measurements are not conclusive of the ability of smaller earthquakes to dislodge unstable rock already weakened by years of quarrying.

Defendants' expert witnesses focused on the particulars of the slide at Haypiece Hill. Mr. Villa, a civil engineer with long experience in the Virgin Islands, opined that water saturation did not cause the rockslide. According to his testimony, the amount of rain which fell prior to the slide would have dislodged, at most, "two or three truckloads of rock." The sort of massive slide which occurred, in his opinion, could not reasonably be attributed to excessive rainfall. Furthermore, he testified that he had observed Haypiece Hill both before and after the December 8th slide and at no time had he found evidence of rain seepage down through the rock face of the cliff.

Dr. Murphy then gave his expert opinion that the sort of weakening of the cliff averred to by plaintiff's experts rendered it highly susceptible to toppling by a small tremor. He testified that although rain was a material factor, it was his opinion that an earthquake of about intensity II in St. Thomas caused the December 8th rockslide that damaged defendants' property. In response to plaintiff's attorney's assertion that he was dealing only in "possibilities," Dr. Murphy demurred and said his scenario was a "probability."

Much has been made of Dr. Murphy's answer to the further question:

Q. [W]hat would you call a probability, 1 in a thousand or 1 in 10,000?

\* \* \*

398

**A.** I would probably say 1 in a thousand or so.

The judge construed that interchange as a suggestion by Dr. Murphy "that the reasonable probability of the rockslide being caused by an earthquake was 1000 to 1" and concluded that the defendants' own expert had damaged their case.

We believe this is an unfair reading of Dr. Murphy's testimony, particularly being mindful of the admonition to make every reasonable inference in favor of the defendants. We construe the remarks as an abstract, generalized discussion of what distinguishes a "probability" from a "possibility." Dr. Murphy was merely stating his view in light of the limited alternatives offered that, when the chances of an event's occurring are 1 in a thousand rather than 1 in 10,000 it is proper to term that event a "probability" rather than a "possibility." At no time was he asked what the odds were as regards this particular event. For all the cross-examination indicates, Dr. Murphy might well have considered the probability that an earthquake caused the rockslide just short of a certainty.

■■ Thus, we hold that the testimony of defendants' experts provided evidence beyond a "mere scintilla"[6] and created a jury question as to the cause of the rockslide and hence of defendants' losses. Although the district judge could properly take into account uncontradicted evidence tending to undermine the defendants' prima facie case,[7] he erred in accepting the opinion of Fireman's Fund's experts over the contrary opinion of defendants' experts as to the cause of the rockslide. A proper adherence to the standards governing the entry of a judgment notwithstanding the

---

[6] A "mere scintilla" of evidence, in federal courts, is not enough to warrant submitting the case to a jury. E.g., Bertot v. School Dist. No. 1, 522 F.2d 1171, 1175 (10th Cir. 1975); Zarzaur v. United States, 493 F.2d 447, 452 (5th Cir. 1974); Hohmann v. Packard Instrument Co., 471 F.2d 815, 819 (7th Cir. 1973); Denneny v. Siegel, 407 F.2d 433, 440 (3d Cir. 1969).

[7] 5A Moore's Federal Practice ¶ 50.02[1] at 2329 n. 27 (1975).

verdict would mandate viewing defendants' evidence as reasonably supporting the inference that a small, unrecorded, and ordinarily harmless earthquake caused an unusually weakened cliff to slide.

Moreover, much of the uncontradicted evidence of the insurance company tended to establish the proposition that the hill was weakened by water saturation caused by the extraordinary rains and by prior quarrying activities and that the strata sloped in such a manner as to facilitate rockslides. This evidence cuts both ways as it allows both the inference that water saturation caused the slide and the inference that, although an unrecorded quake would ordinarily be insufficient to set off a slide, the cliff was so prone to slide that even a small tremor could trigger it.

## IV. New Trial

The district court, in granting the motion for judgment notwithstanding the verdict, conditionally granted Fireman's Fund's alternative motion for a new trial pursuant to Fed. R. Civ. P. 50(c).[8] The ground on which the grant of a new trial rested was "the verdict which the jury returned is contrary to the clear weight of the evidence." Memorandum opinion at 18. We do not find it necessary to weigh the evidence; a new trial is required because the district court erred in assigning, and instructing the jury on, the burden of proof.

## V. Disqualification of Expert Witnesses

As there will be a new trial, we must address the defendants' objection to the disqualification of two of their proposed expert witnesses.

---

[8] Fed. R. Civ. P. 50(c) provides in pertinent part:
(1) If the motion for judgment notwithstanding the verdict, * * * is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial.

Defendants concede that the standard of review on this question is abuse of discretion. Vlases v. Montgomery Ward & Co., 377 F.2d 846, 852–53 (3d Cir. 1967); Roberts v. United States, 316 F.2d 489, 493 (3d Cir. 1963). Our careful review of the record pertaining to the defendants' attempt to qualify their two witnesses as experts reveals that the trial judge acted well within the bounds of his sound discretion.

 The first witness who sought to be qualified possesses a bachelor of arts degree in geology and is a licensed engineer in the Virgin Islands. He has had extensive experience with earth moving. While the judge was quite willing to allow him to testify on subjects such as rock formation or slippage, he ruled that the witness "has no qualification to voice any opinion as to an earthquake or as to whether the earthquake caused it or didn't cause it." As the witness had admitted that he had no training in seismology, we perceive no error in holding him unqualified to give an expert opinion on whether the rockslide was or was not caused by an earthquake.

 Defendants' second witness is licensed as an engineer and architect in the Virgin Islands but holds no degree. He testified that he did not consider himself to be a geologist. His experience with rockslides is limited to excavation procedures. The judge rules that this witness was not an expert on earthquakes. Again, we are persuaded that this ruling was within the bounds of trial court discretion.

### VI. Conclusion

To summarize, the judgment notwithstanding the verdict entered in favor of Fireman's Fund will be reversed. The order granting plaintiff's motion for a new trial will be affirmed and the case will be remanded for that purpose. In the new trial, the burden of proof of coverage under the

insurance policies will be placed on the defendant insureds. Costs taxed against Fireman's Fund Insurance Company, the Appellee and Cross-Appellant.