Aristides MARTINEZ

v.

QUALITY VALUE CONVENIENCE, INC. a/k/a QVC Cable Television Network.

No. CIV. A. 96–7715.

United States District Court, E.D. Pennsylvania.

Feb. 16, 1999.

Aristides Martinez, Princeton, NJ, Pro se.

Michael G. Tierce, Jo Bennett, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Quality Value Convenience, Inc., Defendant.

Brian Matthew Rhodes, EEOC, Philadelphia, PA, for Equal Employment Opportunity Commission, Movants.

## OPINION

POLLAK, District Judge.

### I.

Aristides Martinez brought this action against defendant QVC Cable Television Network ("QVC") asserting that it failed to hire him based on his race, national origin, and age in violation of federal and state law. Additionally, Martinez brought state law claims of negligent and intentional infliction of emotional distress based on QVC's failure to hire him.

QVC previously filed a motion for partial summary judgment (Docket # 16). That motion argued that Martinez had not exhausted administrative remedies for his federal claims related to race and national origin discrimination and that Martinez's state law claims of emotional distress, filed outside the relevant statute of limitations, were time-barred. On September 29, 1998, I denied the motion as to the claim that Martinez had not exhausted his administrative remedies related to race and national origin discrimination, but granted the motion as to the claims of emotional distress (Docket # 42).

Presently before the court is QVC's second motion for partial summary judgment (Docket # 36).[1] In it, QVC argues that partial summary judgment is warranted because Martinez has not satisfied his burden of coming forward with a substantive case of age discrimination.

### II.

Fed.R.Civ.P. 56(c) provides that summary judgment must be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and must resolve all disputed issues of fact and reasonable inferences therefrom in his favor. An issue is material only if it "might affect the outcome of the suit," and is genuine only if the evidence is sufficient to allow a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A.

QVC has moved for summary judgment on the grounds that Martinez has either not established a prima facie case of age discrimination or has not adduced evidence that QVC's proffered non-

---

1. QVC's motion for leave to file a supplemental memorandum of law in support of its second motion for partial summary judgment (Docket # 43; filed October 9, 1998) is also pending. I will deny that motion as moot in light of both this order and my order of October 27, 1998. The latter stated in relevant part:
   2. My Order of September 9, 1998 is modified to permit Plaintiff to respond to Defendant's pending motion for summary judgment until December 1, 1998;
   3. Defendant shall have fourteen days from the filing date of Defendant's response to the pending motion for summary judgment to file a sur-reply; and
   4. Defendant's sur-reply shall be the last pleading on the pending motion for summary judgment, and neither party shall file further responses or sur-replies to said motion.

   Order of October 27, 1998 at 1.

discriminatory reasons were pretextual. To establish a prima facie case of age discrimination, a plaintiff must produce evidence "1) that he belongs to the protected class, 2) that he applied for and was qualified for the job, 3) that despite his qualifications he was rejected, and 4) that the employer either ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination or continued to seek applicants from among those having plaintiff's qualifications." *Fowle v. C & C Cola*, 868 F.2d 59, 61 (3d Cir.1989) (citations omitted). *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir.1995) (reciting similar test for claim of age discriminatory firing). *See also Simpson v. Kay Jewelers*, 142 F.3d 639, 649, 650 (3d Cir.1998) (noting that law of the circuit is unclear regarding the fourth factor) (Pollak, J., concurring). QVC claims that Martinez has failed to produce evidence that he was qualified for the jobs for which he applied.

■ QVC focuses on the question of Martinez's qualifications for the positions for which he applied. A court considering a discrimination claim must evaluate the question of the "plaintiff's qualifications for purposes of proving a prima facie case by an objective standard." *Sempier*, 45 F.3d at 729 (*citing Weldon v. Kraft, Inc.*, 896 F.2d 793, 798 (3d Cir.1990)). QVC argues that Martinez did not have the requisite qualifications for the two positions to which he had applied—technical director and editor.

The advertisement for the technical director position that Martinez alleges he saw in a trade magazine prior to applying described the job in these terms: "Integral position working on a 24–hour television operation controlling robotic cameras, while directing and technical directing a live TV show. Solid TV production experience, knowledge of Grass Valley Switchers and plenty of ambition will be essential." Cavanaugh Dep., Ex. 1. Martinez testified at his deposition that he "definitely" informed QVC employees by telephone that

he had live television experience. Martinez Dep. at 96–97. Similarly, Martinez testified that he had knowledge of the Grass Valley system several years before applying for the position. *Id.* at 84–87.

■ QVC asserts that the position also required experience with digital effects technology. In an affidavit, Michael Cavanaugh, who was then a manager in the QVC human relations department, swears that the position required experience in live television and experience with digital effects technology. Cavanaugh Aff. ¶ 14. QVC's internal description of the technical director position listed the following under "experience":

> An undergraduate degree in a related field or an equivalent combination of training and experience is required. Previous switch and Digital Visual Efforts (DVE's) experience is required. Previous robotic camera experience is preferred. A minimum of six months graphic and/or audio experience is preferred. Demonstrated leadership skills are required. Excellent time management skills are necessary to pace show and meet deadlines. Excellent interpersonal skills are required to interact with all members of the creative team. Must be a team player.

Cavanaugh Aff., Ex. 2. "Digital Visual Efforts" experience may be a form (perhaps misspelled) of what QVC describes in its motion as "digital effects technology" experience. Martinez has admitted that he never worked with digital visual effects technology. Martinez Dep. at 189–90. However, the internal job description that QVC has supplied had unsigned and undated lines next to the designations "approved by" and "date", suggesting that the affidavit exhibit may not have represented the official set of qualifications at the time of Martinez's applications. Because the internal job description may not have been in force when Martinez applied, experience with digital visual effects technology may not have been a requisite qualification, and Martinez's qualification for the position be-

comes a material factual question that should not be resolved on a motion for summary judgment.[2]

■ The trade magazine advertisement for the editor position listed the necessary qualifications in these terms: "Requirements include 1–3 years' experience with Sony 910 or GVG editing systems. The right individual will be creative, quick and have an instinctive feel for what works." Cavanaugh Dep., Ex. 1. In its motion, QVC asserts that there were many more qualifications for the editor job, including an ability "to produce and edit promotional spots, video segments and other projects.... two years' of direct promotional (*i.e.*, commercial) experience.... [and] specific experience with and knowledge of [various sorts of] equipment ... [and] the ability to write copy when required." Def. Mot. at 19. In support of its assertion, QVC cites Cavanaugh's affidavit and an internal job description. Unlike the technical director job description, the editor job description is dated and signed.[3] It is dated February 25, 1994. Martinez has alleged that he applied for the position, and QVC filled the position, prior to that date. Complaint ¶¶ 18–19, 24. I thus cannot assume that the job description represents the qualifications for the position in force at the time Martinez applied, and

limit analysis of Martinez's qualifications to those listed in the trade magazine advertisement. The sole technical requirement listed in the advertisement is "1–3 years' experience with Sony 910 or GVG editing systems." Martinez does not claim that he has experience with the GVG editing system. Moreover, he has admitted that he has never worked with the "Sony DVE–910."[4] Martinez Dep. at 261–62. However, in his brief in opposition to the motion, Martinez claims that he had experience with the BVE 900, which he claims "is practically the same unit" as the BVE 910. Pl. Br. in Opp. at 15. Though it may be appealing to presume that familiarity with one version of a piece of technology translates into familiarity with its successor, I know of no authority for such a presumption. The requirement that a plaintiff make out a prima facie case is not "onerous," *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089, but it does not allow a would-be employee to substitute qualifications—however similar—for those an employer has established. *Cf. Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir.1998) ("The employee's positive performance in another category is not relevant, and neither is the employee's judgment as to the importance of the stated criterion.") (internal citations omitted). Plaintiff has failed to

2. If, at trial, QVC can establish that the job description appended as Exhibit 2 to the Cavanaugh affidavit did in fact represent the necessary qualifications for the job of technical director, and if QVC can prove that "Digital Visual Efforts (DVE's) experience" means "digital visual effects" technology, then a directed verdict for QVC on discrimination claims related to applications for the technical director position would be appropriate.

3. The description lists the following under "experience":
   An undergraduate degree in communications, broadcasting, or a related field or an equivalent combination of training and experience is required. A minimum of two years directly related editing experience is required. Promotional editing experience is preferred. Specific equipment knowledge includes: Grass Valley 100 and 200 switches, Ampex ADO 2000, 1000 M–508

Mixer, Sony BVE 900 Controller & 910, Grass Valley 141 Controller, Beta SP Time Code Editing, GF Dubner knowledge (basic). *Ability to write copy when needed. Ability to handle multiple projects simultaneously within established deadlines is required.*
Cavanaugh Aff., Ex. 3.

4. QVC claims that the deposition transcript is in error, and should read "Sony BVE–910." *See* Def. Mem. of Law in Support of Mot. for Sum. J. at 11 n. 7. Martinez does not deny the claim.

   Contrary to his deposition testimony, Martinez seems to assert in his opposition brief that he does have experience with the BVE 910. Pl. Br. at 15. For support, Martinez *points to his deposition testimony and his resume*, which is attached as an appendix to his brief. Neither supports his assertion.

establish that he met the qualifications put forward by QVC for the editor position.

Martinez asserts, however, that the two persons ultimately hired as editors were themselves unqualified. Pl. Br. at 8–9. While the traditional prima facie test asks only whether the plaintiff is qualified—not whether the person or persons ultimately hired (or promoted or retained) are qualified—Martinez in essence argues that the qualifications propounded by QVC are false. Without an inquiry into the qualifications of those ultimately hired, an employer who erects a set of falsely inflated qualifications could insulate itself from discrimination suits; potential plaintiffs—who, like those ultimately hired, do not meet the employer's inflated qualifications—would be susceptible to motions for summary judgment. Martinez's assertion thus suggests that it may at times be necessary to inquire into the qualifications of those ultimately hired even at the prima facie case stage of the *McDonnell Douglas* structure.

However, Martinez has not shown how the two individuals hired fell short of the qualifications listed in the trade paper advertisement—experience with Sony 910 or GVG editing systems. Instead, he has argued in general terms that the hired individuals were poorly qualified; for instance, he notes that the first hire's employment experience in editing was limited to an internship and that the second hire had only two years' experience. QVC's advertisement established specific technical qualifications for the editing position, not general experience requirements. Martinez has not raised a reasonable doubt about QVC's specific listed qualifications.

In sum, Martinez has established a prima facie case for his claims of discrimination related to his application for the position of technical director, but not for his claims of discrimination related to his application for the position of editor.

**B.**

Once a plaintiff has established a prima facie case, the burden shifts back to the defendant

> to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.

*Burdine*, 450 U.S. at 254, 101 S.Ct. 1089 (footnotes and internal citation omitted). QVC has produced evidence—by way of affidavits and deposition testimony—that the person it hired as technical director had qualifications superior to Martinez's, particularly experience in live television. Cavanaugh Aff. ¶¶ 17–19. The eventual hire had seven years' experience in live television, including recent experience as the technical director of evening and nighttime newscasts at two television stations. *Id.* ¶¶ 18–19. By comparison, Martinez testified that he "never really was interested in technical director work, so that's why [he] never really entered technical director [sic]." Martinez Dep. at 258. At his deposition, Martinez went on to suggest that his lack of significant experience should not preclude him from becoming a technical director: "for the past 25 years [my work] has been editing, as an employee, but that doesn't mean in my personal endeavors I can't do some other things." *Id.* When asked whether he had ever worked as a technical director, Martinez argued that an editor and a technical director were the same thing: "I know what a technical director is and an editor is the technical director in fact." *Id.* The closest Martinez came to claiming experience as a technical director was his statement that

"I worked for Channel 13 as a technical director, because the jobs over there, they rotate, and you had to do technical director kind of duties." *Id.* at 259. That work was not in live television, *id.* at 260–61, and was several years prior to his application to QVC.

QVC's legitimate nondiscriminatory explanation for its hiring decision to shift the burden back to Martinez to produce evidence sufficient to raise material doubts about QVC's proffered explanation.

### C.

"[T]o defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Sempier,* 45 F.3d at 728. In assessing the evidence to which plaintiff points, I bear in mind that "[a] 'mere scintilla' of evidence, in federal courts, is not enough to warrant submitting a case to a jury." *Fireman's Fund Ins. Co. v. Videfreeze Corp.,* 540 F.2d 1171, 1180 n. 6 (3d Cir.1976).

■ Martinez points to several pieces of evidence that he believes suggest that QVC sought only young persons for its technical director positions. None of the arguments, however, "point[s] to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Sempier,* 45 F.3d at 728.

Martinez notes that QVC's trade paper employment advertisement for the week of January 24, 1994 listed desirable candidates as those "with a strong knowledge of and identification with the 'twentysomething' market." Moreover, he argues that a line in the advertisement stating that QVC was "willing to train" reveals that QVC sought inexperienced—and presumably therefore young—applicants. Pl. Br. at 4–5. By themselves, these facts do not suggest discrimination or raise questions about QVC's proffered explanation. An employer is not prevented from seeking employees who are knowledgeable about, and can identify with, a segment of an advertising market that the employer seeks to serve. Similarly, even if a willingness to train indicates a desire for inexperienced employees—which I doubt it does—Martinez suggests no way in which a factfinder could legitimately read a desire for inexperienced employees as a coded preference for young employees; inexperience is not limited to the young.

Martinez asserts that he sent QVC "presentation reels" showcasing his abilities as a producer, and that those reels prove that he was sufficiently qualified for the job of technical director. Pl. Br. at 5 n. 4. The issue here, however, is not whether Martinez was qualified for the position, but whether QVC's preference for its eventual hire was based on legitimate nondiscriminatory criteria. QVC claims that it based its decision on the eventual hire's superior and more recent experience in live television. Martinez's presentation reels may showcase strong producing abilities, but they do nothing to rebut QVC's claim that it preferred a candidate with broader and more recent experience. Simply put, Martinez's abilities as a producer are not at issue; his experience as a technical director is.

Martinez also points to the fact that QVC hired seven younger applicants for technical director positions during the ensuing nine months. Pl. Br. at 5–6. Moreover, he argues, the department to which he applied at QVC had only hired one employee older than forty. Pl. Br. at 9. That QVC subsequently hired young technical directors and hired few older workers in the broadcasting department does not by itself raise a reasonable inference that QVC's asserted preference for substantial and recent live television experience is pretextual. Because Martinez offers no information about the applicant pool for the positions—whether any applicants were

forty or above—the age of subsequent hires does not provide circumstantial evidence of discrimination.

Martinez states that QVC preferred persons with consistent work histories over those who frequently changed employers. Pl. Br. at 9. A preference for employees likely to remain with their employer for some time does not appear to be in any way related to bias against those forty and above; if anything, it would seem to suggest bias against younger persons, who have had less of an opportunity to develop consistent work histories.

Martinez asserts that QVC preferred a " 'younger', twentysomething fashion-conscious market-oriented employee, the well-dressed image." Pl. Br. at 9. In support of his assertion, he points to the deposition testimony of two QVC employees—Sean Treacy and Michael Cavanaugh.[5] Neither Treacy nor Cavanaugh makes any statement that a reasonable factfinder could interpret as a QVC preference for younger, "twentysomething" employees. While both acknowledge that QVC targeted a young, "twentysomething" advertising market, neither stated that QVC sought employees who were themselves young or "twentysomething." [6]

In sum, Martinez has not satisfied his burden of pointing "to evidence establishing a reasonable inference that the employer's proffered explanation" for its refusal to hire him as a technical director "is unworthy of credence." *Sempier,* 45 F.3d at 728.

## III.

Because Martinez has (1) not established a prima facie case with regard to his claims arising from his application to the editor position, and because (2) he has not raised a reasonable inference that QVC's explanation for choosing another applicant for the technical director position was pretextual, I grant defendant's motion for par-

---

5. Martinez also points again to the trade paper advertisement, sections from which were quoted above. In particular, Martinez points to the preface that precedes the various job listings. In full, it reads: "As the newest cable channel of the QVC Network, On–Q is supported by all the technical sophistication, marketing savvy and visionary leadership that has made QVC the world's largest cable shopping network. Targeted to the twentysomething, fashion conscious audience, On–Q is poised to tap into one of the most sought after markets today. [¶]To meet the challenges of this exciting new enterprise, we have an immediate need for several dedicated professionals." I do not believe that this preface can be reasonably interpreted to express a preference for younger employees. Accordingly, Martinez's invocation of this advertisement does not cast doubt on QVC's proffered explanation for its hiring decision.

6. In relevant part, Cavanaugh's deposition transcript reads as follows:

Q: It says over here, QVC is interested in hiring people that have experience in human resources, and you see this ad, and it is targeted 20–something fashion-conscious audience . . .

. . .

A: We were describing the service, not the position. We described the service, because on—QVC at that time, quite frankly, was viewed as a much older audience, QVC's audience

Q: Older audience. You are talking about ages right now; yes?

. . .

Mr. Tierce: Settle down. He's try—

The Witness: Again, you're not listening.

Mr. Tierce: He's talking about the customer, not employees.

By Mr. Martinez:

Q: You are talking about the customers.

A: The customer base for QVC was well established, two-income family, with two or three kids. If you do the demographics, it was that. We wanted to tap into a new and very hot market at the time. They were the spenders. The 20–something crowd was spending money at a rapid clip, and we weren't getting any of that. So we decided to get—

A: I understand that.

Q: You don't want to hear my answers.

A: I already know.

Cavanaugh Dep., 155–57. The portion of Treacy's deposition transcript to which Martinez apparently cites reads as follows:

Q: [referring to advertisement] And over here at QVC, it says that you target people that they are 20–something; right? Oriented to the 20–something market; right?

A: Yes. . . .

tial summary judgment—with regard to Martinez's claims of age discrimination—in an order accompanying this memorandum.

## ORDER

For the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant's Motion for Leave to File a Supplemental Memorandum of Law (Docket # 43) is DENIED as MOOT; and

2. Defendant's Motion for Summary Judgment (Docket # 36) is GRANTED as to Plaintiff's claims of age discrimination.

3. The Clerk of Court shall schedule this civil action for trial.