227 P.3d 23 (2010)
Kris T. TARLTON and Sara L. Tarlton, Appellees,
v.
MILLER'S OF CLAFLIN, INC., and S & H Lumber Co., Inc., Appellants, and
Kustom Floor Designs, et al., Defendants.
No. 101,968.
Court of Appeals of Kansas.
April 2, 2010.
*25 Jeff Lee McVey, of McPherson & McVey Law Offices, Chtd., of Great Bend, for appellants.
Kenneth L. Kerns, of Great Bend, for appellees.
Before McANANY, P.J., GREEN and MALONE, JJ.
McANANY, J.
Miller's of Claflin, Inc. (Miller), and S & H Lumber Co. (S & H), appeal the district court's cancellation of their claimed mechanics' liens on the home of Kris and Sara Tarlton (Tarltons) based upon the finding that Miller and S & H failed to properly perfect their liens as subcontractors.

Facts
The Tarltons engaged Chad Gisick, d/b/a Gisick Construction, to serve as the general contractor in the construction of their new home. They made periodic progress payments to Gisick for work done on the project, apparently based on representations from Gisick but without obtaining lien waivers from the various suppliers. The payment schedule left a remaining balance to be paid to Gisick upon completion of the project. Gisick died in February 2007 before completing the project. His estate was unable to satisfy the outstanding claims of his subcontractors. Miller and S & H filed mechanic's lien statements for unpaid work and materials. Neither Miller nor S & H sent the Tarltons the warning statements required of subcontractors pursuant to K.S.A. 60-1103a(b).
Following Gisick's death, the Tarltons filed an interpleader action with respect to the remaining unspent funds for the project. S & H and Miller counterclaimed for enforcement of their mechanics' liens. The Tarltons ultimately moved the court for adjudication and cancellation of the liens claimed by Miller and S & H.
The district court tried the issue based upon the documentary evidence supplied by the parties, the oral arguments of counsel, and the arguments in their briefs. The court ruled after reviewing "the pleadings . . . as well as the attachments which includes exhibits and affidavits." There are no affidavits in the record relating to the central issue in this appeal: whether S & H and Miller had contracts with the Tarltons to supply labor and materials to the project. The court ruled that S & H and Miller were subcontractors of Gisick who failed to perfect their liens as subcontractors by giving the statutorily required notice to the owners. Thus, the court struck down their liens. S & H and Miller appeal.

Standard of Review
Under these circumstances, in which the district court was not required to consider matters of credibility but rather to rule on the documentary evidence before it, we are equally capable of examining the documents to determine if the liens were properly perfected. Accordingly, our review is de novo. See Double M Constr. v. Kansas Corporation *26 Comm'n, 288 Kan. 268, 271, 202 P.3d 7 (2009).

Mechanics' Liens
Mechanics' liens are governed by K.S.A. 60-1101 et seq. They are designed to protect unpaid suppliers of labor and materials for real estate construction projects. See K.S.A. 60-1101. However, to create a lien a claimant must strictly comply with the applicable statute. Buchanan v. Overley, 39 Kan. App.2d 171, 175, 178 P.3d 53 (2008). One claiming a mechanic's lien has the burden of bringing one's self clearly within the provisions of the statute. Creme de la Creme (Kansas), Inc. v. R & R Int'l, Inc., 32 Kan. App.2d 490, 493, 85 P.3d 205, rev. denied 278 Kan. 844 (2004).
There are different lien perfection requirements for general contractors and for subcontractors. See generally Stewart v. Cunningham, 219 Kan. 374, 376, 548 P.2d 740 (1976). One difference is the requirement in K.S.A. 60-1103a(b) that subcontractors mail to the property owner the warning statement identified in K.S.A. 60-1103a(c) or obtain the owner's signed acknowledgement of that warning and file an affidavit stating that they did so.
There is no question that Miller and S & H did not comply with the statutory requirement that subcontractors give the owners this warning statement. The case turns on whether Miller and S & H were subcontractors of Gisick, the general contractor, or whether they had independent, direct contracts with the Tarltons to supply materials and labor to the project. Whether contracts existed between the Tarltons and these claimants are questions of fact. See In re Estate of Hjersted, 285 Kan. 559, 589, 175 P.3d 810 (2008). Applying the de novo standard of review, we must examine the documentary evidence before the district court to determine if the party bearing the burden of proof on the issue of the existence of a contract between the parties met that burden.

Burden of Proof
First, we must determine who has the burden of proof on the issue of the status of Miller and S & H vis-a-vis the Tarltons. We find no Kansas authority that addresses the issue in the context of the facts now before us. However, the issue arises from time to time in declaratory judgment actions in which courts have developed an analytical framework for deciding which party bears the burden of proof.
Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171 (3d Cir.1976), cert. denied 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), presents a thoughtful analysis of the issue. In Videfreeze, the court noted the following tests for determining who has the burden of proof in a declaratory judgment action:
"(1) whether the plaintiff objected to assuming the burden of proof; (2) which party asserted the affirmative of the issue; (3) which party would lose in the absence of any evidence on the issue; (4) what sort of relief is sought." 540 F.2d at 1175.
In Videfreeze, the insureds suffered a loss when a rockslide damaged their building and interrupted their business in St. Thomas, Virgin Islands. The insurer had issued a policy containing an endorsement that provided coverage for losses caused by earthquake. The insureds made a claim under the policy, asserting that the rockslide was caused by an earthquake which four witnesses claimed to have felt, though no earthquake was recorded on the nearest seismograph in Puerto Rico. The insurer denied that an earthquake caused the rockslide, claiming that rain water penetrated fractures in the rock above the insured's building and dislodged the side of the cliff, causing the rockslide. The insurer brought a declaratory judgment action to determine the rights and responsibilities of the parties under the policy.
Central to resolution of the dispute was determining who had the burden of proof. The court cited Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 A. 129 (1937), in which "the New Hampshire Supreme Court refused to displace the burden of proof of coverage from its normal location on the insured, despite the reversed positions of the parties in the action." Videfreeze, 540 F.2d *27 at 1175. The court noted that when an insurer sues its insured to obtain a declaration that there is no coverage under the policy, "`(i)t would seem rather anomalous that so important a matter (as the burden of proof) should depend on the chance of who first sues. . . .' [Citation omitted.]" 540 F.2d at 1176.
The Videfreeze court also cited Reliance Life Ins. Co. v. Burgess, 112 F.2d 234 (8th Cir.), cert. denied 311 U.S. 699, 61 S.Ct. 137, 85 L.Ed. 453 (1940), and observed:
"In Burgess, the insurance company was made to bear the burden of proof but not merely because it happened to be the plaintiff in the declaratory judgment action. Rather, the court considered that the company disputed coverage by asserting an affirmative defense of exclusion and that the insured neither asked for affirmative relief nor put forth a cause of action. In that posture, the insurer properly was required to prove that the loss was due to an excluded cause." Videfreeze, 540 F.2d at 1175.
The insureds in Videfreeze asserted a counterclaim for coverage. "[T]he insureds, although nominally the defendants, were affirmatively asserting coverage under the policies and risked an adverse judgment on their counterclaims for damages if they adduced no evidence of coverage." 540 F.2d at 1176. Accordingly, the court found that the insureds bore the burden of proof on the issue of coverage.
For a similar analysis, see Preferred Acc. Ins. Co. of N.Y. v. Grasso, 186 F.2d 987, 991 (2d Cir.1951).
Turning to the claims now before us, we first examine the procedural history. The Tarltons brought this interpleader action against a number of suppliers on the project. They claimed in their petition that S & H and Miller "have or may have claims." The Tarltons tendered into court $13,389.17, "the amount remaining for distribution and payment to the Defendants now making claims." The Tarltons did not ask for affirmative relief with respect to the lien claims of S & H and Miller.
S & H and Miller answered and asserted a counterclaim, alleging that the Tarltons entered into contracts with them to supply labor and materials on the project. They asked the court to determine that their liens are valid liens on the property. The Tarltons filed their reply, in which they denied the allegation that a contractual relationship existed between them and S & H and Miller.
In due course the Tarltons filed their motion for adjudication and cancellation of liens. They asserted that the lien statements filed by S & H and Miller failed to comply with the statutory requirements and, therefore, the claimed liens were invalid. In their response to the motion, S & H and Miller acknowledged the duty of subcontractors to provide the warning statement described in K.S.A. 60-1103a, but asserted that they were direct contracting parties with the Tarltons and not subcontractors of Gisick, the general contractor.
Though the Tarltons initiated this interpleader action, they do not have the burden of proof on the issue of whether a contract existed between them and S & H or Miller. The issue was raised by S & H and Miller in their counterclaim. They have the burden of bringing themselves within the aegis of our mechanic's lien laws. Their lien claims are at risk if they cannot establish what they claimed in their counterclaim: that they are not subcontractors of Gisick but direct contracting parties with the Tarltons. Accordingly, they have the burden of proof on the claim that they had contractual relationships with the Tarltons.

S & H's Lien Claim
With respect to S & H's lien claim, the district court found:
"There were at least eight separate documents with different dates wherein [S & H] sold materials to Gisick Construction, who then provided the materials to the plaintiff. . . . Even though [S & H] attempts at this time to claim Gisick was only an agent of the [Tarltons], the documents make it clear Gisick was the contractor and [S & H] was the sub-contractor. . . . There was no warning statement *28 sent, and therefore, the lien is defective and . . . must be cancelled."
The documents before the court clearly indicated that S & H was a subcontractor of Gisick. Each of the invoices that S & H relies on contains the statement: "Sold To Gisick Const." Nevertheless, S & H maintains on appeal that the Tarltons entered into an oral contract with Gisick, who was the Tarltons' agent for supplying materials for the project. There is no evidence that Gisick was the Tarltons' agent. He contracted to build a home for them, not to serve as their agent. "[W]here the relationship of principal and agent is in issue, the party relying on an alleged agency relationship has the burden of establishing its existence by clear and satisfactory evidence." Town Center Shopping Center v. Premier Mortgage Funding, Inc., 37 Kan.App.2d 1, 6, 148 P.3d 565 (2006).
There is a total lack of evidence to support the existence of a contractual relationship between S & H and the Tarltons. S & H failed to meet its burden of proof on this issue. The district court did not err in finding S & H's lien claim to be invalid.

Miller's Lien Claim
The evidence supporting Miller's lien claim consists of two documents attached to Miller's lien statement: an invoice and a sales order form. These two documents are the entirety of the documentary evidence bearing on the issue of Miller's relationship to the Tarltons. The invoice was generated from information contained on the sales order form. Thus, we must look to the sales order form for evidence of the claimed contractual relationship.
The sales order form lists "Chris and Sara Tarlton" as the customer. However, the "Special Instructions" portion states: "Send to Chad." This apparently refers to Chad Gisick, the general contractor. Send what to Chad and at what location? Clearly not the purchased items of carpet, laminate, and tile. There would be no reason to deliver these items to the general contractor rather than to the job site. After all, Miller was responsible for installation of at least part of the materials, and the flooring in particular. There would be no reason to send these materials to Gisick rather than to the job site. However, if this reference on the document means that the materials should be sent to Gisick, that would tend to prove that Gisick was the contracting party, not the Tarltons.
On the other hand, "Send to Chad" may refer to this sales order form itself, not the materials being sold. If that is the case, then this would also tend to prove that Gisick was the contracting party. Otherwise, why would Gisick have any interest in what particular flooring and tile the Tarltons selected or what they agreed to pay for it?
A notation on the bottom of the sales order form suggests the latter alternative. The form states: "Miller's make no express warranties. We honor and follow factory warranties only. Orders are noncancelable upon manufacturer's acceptance. Please review policies on reverse side of your ticket. Accepted By: X Phone (Chad Gisick)." We find no explanation in the evidence why Miller would obtain Gisick's acceptance of the order if the Tarltons were the contracting parties.
Miller had the duty to come forward with evidence from which one could conclude that it is more probably true than not that the Tarltons were the contracting party, not Gisick. From what meager evidence was provided, we cannot say that Miller met its burden of proof. Because the adequacy of Miller's lien statement turns upon Miller establishing that Miller had a direct contract with the Tarltons, we conclude that the district court did not err in finding Miller's lien statement to be inadequate and its claimed lien invalid.
Affirmed.