**NORTH AMERICAN SPECIALTY
INSURANCE COMPANY,**
Plaintiff,

v.

**Frank J. BADER, Carolyn L. Shagen,
Executrix of the Estate of Edward G.
Shagen, Deceased, and Carolyn L.
Shagen, Individually, Robert J. Bruce,
Defendants.**

**Civ. A. No. 97–04746 (JEI).**

United States District Court,
D. New Jersey.

July 23, 1999.

Picillo Caruso, P.C. by Steven A. Weiner, West Orange, NJ, for Plaintiff.

Poplar & Eastlack, P.C. by Teri S. Lodge, Turnersville, NJ, for Defendants.

## OPINION

IRENAS, District Judge.

Presently before this court is plaintiff North American Specialty Insurance Company's motion for summary judgment as to its request for a declaratory judgment against defendant Frank Bader. For the

reasons set forth below, plaintiff's motion for summary judgment is denied.

## I.

On July 6, 1996, defendants Frank Bader ("Bader") and Robert Bruce ("Bruce") were involved in a water boat accident that resulted in fatal injuries to Edward Shagen ("Shagen"). Each defendant, as well as Shagen, were operating separate watercraft when the accident occurred.

At the time of the accident, the watercraft belonging to Bader was insured under a liability and property policy ("the policy") issued by National Marine Underwriters on behalf of plaintiff North American Specialty Insurance Company ("North American" or "Plaintiff"). The insurance policy between Bader and plaintiff was a one year policy that was initially issued on August 25, 1991, and renewed annually thereafter. The last insurance policy in effect prior to the accident was a renewal policy that began coverage on September 6, 1995.

Each year, from 1991 through 1995, Bader's policy was renewed and paid for by credit card telephonically. Thereafter, North American mailed an application to Bader who signed and returned such application to plaintiff. The signed application then became the declaration sheet for the policy.

As declared on the renewal policy, the rated horsepower for Bader's boat was 330 horsepower per each of its two engines. Subsequent to the September, 1995, renewal and prior to the July, 1996, accident, Bader replaced the original engines with high performance engines of 480 horsepower each. There is no evidence that suggests that the increased horsepower of Bader's watercraft contributed to his accident with the deceased.

As a result of the accident, Carolyn Shagen ("Shagen"), Executrix of the Estate of Edward Shagen, Deceased, and Carolyn Shagen, Individually, filed a wrongful death action against Bader and Bruce seeking special and liquidated damages in New Jersey state court. Defendant Bruce has asserted cross claims against Bader in the underlying state court matter.

North American was unaware that Bader's boat engines were replaced until they investigated the claim after the fatal accident. As Bader's insurance carrier, North American is currently defending Bader against Shagen's state court action under a reservation of rights assertion.

On September 24, 1997, North American filed a complaint seeking a declaratory judgment that its obligation to defend and indemnify Bader is null and void. On January 23, 1998, defendant Bader filed a counterclaim against North American seeking a declaratory judgment that North American is required to defend and indemnify him in the underlying state court action.

On June 8, 1999, North American brought the instant motion for summary judgment. Specifically, plaintiff alleges that Bader has violated his duty of good faith and fair dealing based on his material misrepresentations concerning the alteration performed on his boat. North American argues that they should not be required to indemnify Bader because, at the time of Bader's 1995 policy renewal, Bader was already under contract to have his boat's engines replaced. Plaintiff contends that the modification, if disclosed to them, would have resulted in a non-renewal or cancellation of all coverages.

Bader contends that there is nothing in the record to support plaintiff's allegations that he is not entitled to indemnification, and that summary judgment for the plaintiff is improper.

## II.

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty\Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Idus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring).

1. This Court notes that plaintiff's complaint does not plead admiralty jurisdiction but pleads jurisdiction pursuant to 28 U.S.C. §§ 1331, and 1332.

## III.

### A.

■ This Court must first consider whether federal or state law should be applied to the facts of the present case. North American argues that federal substantive law should be applied to the determination of coverage issues under a marine insurance policy. Specifically, plaintiff contends that the insurance policy at issue is a maritime contract within federal admiralty jurisdiction[1] and that the federal doctrine of *uberrimae fidei*[2], or good faith in entering a contract, is controlling.

Defendant contends that New Jersey state law should be applied because at issue are questions of contract interpretation and personal injury. In particular, Bader argues that the doctrine of *uberrimae fidei* should give way to the state's interest in regulating the relationship between insurer and insured. The parties do not dispute that the contract in dispute is a maritime contract.

■ Generally, a contract to insure a ship is maritime. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). However, admiralty jurisdiction arises in breach of contract cases only when the subject matter of the contract is "purely" or "wholly" maritime in nature. *Berkshire v. M.V. Hakusan II,* 954 F.2d 874, 880 (3d Cir.1992). In other words, when a court finds that the contract solely concerns the operation or navigation of a ship, the court asserts admiralty jurisdiction over the case. *Id.* Plaintiff argues that the instant case solely concerns the operation of a ship and defendant argues that the instant case concerns contract interpretation and personal injury.

2. Uberrimae fidei is a phrase used to express the perfect good faith, concealing nothing, with which an [insurance] contract must be made. BLACK'S LAW DICTIONARY 1363 (5th ed.1979).

■ Marine insurance is insurance with a subject matter specifically related to the hazards encountered in maritime transportation. *Acadia Ins. Co. v. McNeil,* 116 F.3d 599, 601 (1st Cir.1997). Moreover, since pleasure boats constitute a significant part of maritime commerce, admiralty jurisdiction extends to pleasure craft. *Sirius Ins. Co. v. Collins,* 16 F.3d 34, 37 (2d Cir.1994).

It appears that federal admiralty law should be applied in deciding the present case. The marine insurance policy on Bader's pleasure boat was maritime in nature and dealt explicitly, if not exclusively, with maritime transportation.

■ The mere fact that federal admiralty law should be applied in this case, however, does not entirely preclude the application of state law. In the absence of controlling federal admiralty law to guide the resolution of a particular issue, the applicable state law must be applied. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 313–14, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In other words, if there is a federal admiralty rule, state law may not override it. If there is no established federal rule, the issue presented is whether the court should create one. There is a strong presumption against creating a federal admiralty rule where none exists. *Big Lift Shipping Co. v. Bellefonte Ins. Co.,* 594 F.Supp. 701 (S.D.N.Y.1984). *See also* THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW, § 19–2, at 401 (2d ed.1987).

In accord with *Wilburn,* this court will apply federal admiralty law to this case where established federal rules exist. When no federal rules are present, the New Jersey rule governing the issue will be applied. This court notes however, that for the purposes of this motion, the particular issues presented would not be decided differently regardless of whether federal or state law was applied.

**B.**

North American contends that Bader breached the insurance contract by violat-

ing its policy language and provisions. Alternatively, plaintiff argues that Bader violated the doctrine of *uberrimae fidei* by failing to disclose an expected change in his insured yacht. In particular, plaintiff asserts that Bader's non-disclosure of his boat's engine replacement constituted a fraudulent misrepresentation that voided coverage under his policy. Plaintiff maintains that had they been aware of the change in the insured boat, Bader's policy would have been terminated.

Bader argues that the language of the insurance policy at issue is ambiguous and emphasizes that ambiguities in contracts must be construed in favor of an insured. Specifically, he argues that the language of the policy does not require an applicant to disclose any changes he intends to make to the insured vessel in the future. Moreover, Bader argues that the changes in engines and rated horsepower would not have materially affected the risk of being insured. This court agrees with defendant and North American's motion is denied.

■ "Where ambiguous, insurance contracts are to be construed strictly against the insurer" because it is the insurance carrier that typically drafts the policy. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985); *see also HS Services, Inc. v. Nationwide Mut. Ins. Co.,* 109 F.3d 642, 645 (9th Cir.1997); *United Nat'l Ins. Co. v. SST Fitness Corp.,* 182 F.3d 447 (6th Cir.1999). A Marine insurance policy is not exempt from "the fundamental rule that if there is any doubt as to the meaning of a clause in an insurance policy, it must be construed against the insurer and in favor of the insured." *Kalmbach, Inc. v. Ins. Co. of the State of Pennsylvania, Inc.,* 529 F.2d 552, 555 (9th Cir.1976); *see also Playboy Enters., Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425 (7th Cir.1985).

■ In the present case, the policy language upon which plaintiff relies is ambiguous and unclear. Plaintiff contends that

Bader breached the contract by violating the contractual language provision entitled "Read Carefully," which provides:

Check all information for accuracy and completeness.

**Any person who, with intent to defraud or knowing that he is facilitating fraud against the insurer, submits an application or files a claim containing false or deceptive statement is guilty of insurance fraud.**

*See* 1995 Insurance Renewal Contract. Nothing in the above language supports plaintiff's argument that Bader was obligated to notify plaintiff of future plans to alter the engine of his boat.

The plain language of the policy speaks only to the specifics of the insured craft at the time of policy renewal. On September 6, 1995, the date the insurance policy was last renewed, Bader's boat contained the original stock 330 horsepower engines. It was not until the Spring of 1996, that the boat's engine replacement was complete. Reading this language in its literal sense and in a light most favorable to the insured defendant, this court rejects plaintiff's contention that Bader fraudulently misrepresented the horsepower of his boat.

■ North American further contends that Bader breached the contract by violating the provision that requires changes in the policy to be in writing. The policy provides:

**Changes in Policy.** This policy contains all agreements between you and us. No changes may be made unless they are in writing.

Plaintiff erroneously argues that this language should be construed to mean that no changes to the insured vessel may be made unless they are stipulated in writing. This court rejects plaintiff's argument.

The clause at issue merely requires any changes to the actual insurance policy or contract itself to be in writing. At best, the clause is ambiguous and may not be construed to include changes made to the insured vessel. Again, reading this language in its literal sense and in a light most favorable to the insured defendant, this court rejects plaintiff's interpretation of this language.

■ Alternatively, plaintiff argues that Bader's failure to disclose his plans to replace the engines in his boat on the renewal policy was a breach of his duty under the doctrine of *uberrimae fidei*. In particular, plaintiff contends that had the information about the proposed engine replacement been disclosed, Bader's insurance coverage would have been terminated. However, the evidence submitted indicates that a genuine issue of material fact exists as to whether North American would have terminated Bader's insurance based on an increase in engine horsepower.

■ Under the doctrine of *uberrimae fidei*, parties to a marine insurance contract must accord each other the utmost degree of good faith. *See Puritan Ins. Co. v. Eagle S.S. Co.*, 779 F.2d 866, 870 (2d Cir.1985); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir.1986). The doctrine requires the insured to disclose to the insurer all known circumstances that would materially affect the insurer's decision to assume the risk. *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 509–510, 1 S.Ct. 582, 27 L.Ed. 337 (1883). A failure to disclose material information works to void the policy. *Gulfstream Cargo. Ltd. v. Reliance Ins. Co.*, (5th Cir. 1969).

■ "The principle of *uberrimae fidei* does not require the voiding of a contract unless the undisclosed facts were material and relied upon." *Puritan* 779 F.2d 866, at 871. A fact is not material unless it is something that would have controlled the insurer's decision to underwrite the risk. *Btesh v. Royal Ins. Co.*, 49 F.2d 720, 721 (2d Cir.1931). In other words, a marine insurance policy should not be voided unless the alleged misrepresentation was relied upon and would have controlled the underwriter's decision if disclosed. The

standard for disclosure under *uberrimae fidei* is whether a reasonable person in the insured's position would know that the particular fact is material. *See id.*

The record reveals that on August 17, 1993, Bader's boat, equipped with the original 330 horsepower engines, was examined by William S. Major, a marine engineer employed by the plaintiff. The engineer noted hull damage and specifically noted in a written report to plaintiff that Bader's boat was producing horsepower in excess of the rated horsepower as stated on the declaration page of the insurance policy. As a result of the hull damage found during inspection, Bader's boat was rendered unseaworthy and was insured for port risk only. *See* Inspection Report of William S. Major (August 17, 1993).

On or about July 12, 1994, Bader's boat was reinspected and determined to have been satisfactorily repaired and an acceptable risk. *See* Inspection Report of William S. Major (July 12, 1994). Shortly thereafter, Bader's insurance was resumed in full and the port risk restriction was lifted. However, only the hull damage was repaired at the time of full reinstatement of coverage. North American neither investigated the excessive horsepower of Bader's boat nor amended his policy to reflect the higher level. *See* Deposition of Richard Logan (May 8, 1998); *see also* Deposition of William Major (June 23, 1998).

The record reveals that plaintiff was made aware that Bader's original boat engines were producing horsepower greater than the amount listed on the declaration page of the insurance policy. At the time of the 1993, and 1994 inspections, Plaintiff failed to inquire into the excessive horsepower of Bader's boat and appeared unconcerned about the matter until Bader's fatal accident.

It is clear that at the time of these inspections, plaintiff did not consider excessive horsepower to be a material fact that would affect their decision to assume the risk of insuring Bader. Consequently, at the time of the last policy renewal,

Bader could have reasonably assumed that the alterations to his engines and their levels of horsepower were not considered material by the plaintiff. A reasonable person in Bader's position could have safely assumed that the rated horsepower of his boat's engines were not material given plaintiff's neglect of the issue in 1993. In short, the record suggests that plaintiff did not consider the rated horsepower of Bader's boat to be a material fact until the 1996 accident.

Defendant has demonstrated, and the record reveals, that there are genuine issues of material fact as to the language of the policy and the materiality of the excessive boat horsepower. Consequently, Bader has proffered evidence which could be a basis for a jury finding in his favor. Construing the facts and inferences in a light most favorable to Bader, this Court finds that there are genuine issues of material fact as to plaintiff's claim and that summary judgment is inappropriate.

**IV.**

For the reasons set forth above, this Court denies plaintiff's motion for summary judgment. An appropriate order in conformance with this opinion will be entered on an even date herewith.