CENTENNIAL INSURANCE COMPANY, Plaintiff,

v.

LITHOTECH SALES, LLC, Defendant.

No. CIV.A. 99–1949(JWB).

United States District Court, D. New Jersey.

Feb. 13, 2001.

Duane, Morris & Heckscher, by James W. Carbin, Esquire, Newark, NJ, for Plaintiff.

Kleeblatt, Galler, Abramson, Zakim & Davidson, by Richard P. Galler, Esquire, Hackensack, NJ, for Defendant.

## OPINION

BISSELL, District Judge.

This matter comes before the Court on plaintiff Centennial Insurance Company's ("Centennial") motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff Centennial filed suit in this Court on April 29, 1999, seeking a declaratory judgment that it is not obligated to defend and/or indemnify the defendant under an insurance policy which it issued. On May 28, 1999, defendant filed its Answer and Counterclaim, where it similarly seeks a declaratory judgment on the coverage issue.

Plaintiff presently moves for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1333.

### FACTS

Plaintiff Centennial is a New Jersey corporation with an office in Madison, New Jersey. Defendant Lithotech Sales, LLC ("Lithotech"), is also a New Jersey corporation with its office and place of business in Ridgewood, New Jersey. (Compl., ¶¶ 3–4).

In 1998, Centennial issued to Lithotech a Marine Open Cargo Policy that insured against certain risks of loss to shipments made on or after July 7, 1998. (Id., ¶ 5). Plaintiff delivered that policy to defendant's broker, Capacity Coverage Company, at 120 Pleasant Avenue, Upper Saddle River, New Jersey. (Id.)

Sometime in 1998, a complaint was filed in the Eastern District of New York, captioned Litho 21 and WLINC, Inc. v. Milton Moskowitz, Litho Tech Sales, et al., Docket No. 98–cv–7692. There, the plaintiffs alleged that the defendants had failed to deliver the correct commercial printing press that was actually ordered (instead

delivering a substitute press), thereby causing the loss of several hundred thousand dollars. The defendants filed an answer and the case remains pending in the Eastern District of New York.

Subsequently, defendant Lithotech filed a claim with Centennial Insurance, seeking coverage and protection from the New York action. Centennial denied any duty under the policy and subsequently filed the present action seeking a declaratory judgment on the issue of coverage. Lithotech answered the complaint and counterclaimed for declaratory judgment in its favor. In particular, Lithotech claimed that the "Fraudulent Bills of Lading Clause" entitled it to coverage under the policy.

By affidavit testimony, Lithotech submits that in the instant case it arranged on behalf of an American client to procure a particular printing press that was purportedly located in Indonesia. (Moskowitz Aff., ¶ 2, attached to Opp. Br. as Exh. A). Apparently, when the press arrived in the United States it was revealed that the press did not meet the buyer's expectation. Lithotech admits that, contrary to normal business practice, it did not inspect the press before it arranged to have it shipped to the purchaser in the United States, the implication being that Lithotech assumed the press was of the right type based on the word of a credible third party. (*Id.*, ¶¶ 2, 3). There is no evidence that indicates anything unusual occurred during shipment;[1] however, Lithotech alleges that a different press was substituted between Indonesia and the United States. (*Id.*, ¶ 6).

---

**1.** Lithotech's affidavit makes vague reference to the uncrated press as showing signs of "fire damage," but does not affirmatively assert that this damage was sustained during shipment of the press nor does it deny that any such damage may have been pre-existing.

## The Policy

The type of policy at issue in this action is a Marine Open Cargo Policy ("the Policy"). The "Insuring Conditions Clause" of the Policy provides:

New and refurbished printing presses and similar merchandise incidental to the business of the Assured except while on deck of ocean vessel under an on deck bill of lading, are insured:

*Against all risks of physical loss or damage from any external cause* irrespective of percentage but excluding those risks excepted by the "F.C. & S. and S.R. & C.C." warranties and the "Delay" clause in this policy, except to the extent that such risks are specifically covered elsewhere herein.

(Plaintiff's Statement of Undisputed Facts, Exh. 1, ¶ 6) (emphasis added). Also at issue is the Policy's "Fraudulent Bills of Lading Clause." That clause provides that:

This policy also covers loss of or damage to the property insured occasioned through the acceptance by the Insured or Insured's agent or customers or consignees or others of Fraudulent Bills of Lading or Shipping Receipts.

(Plaintiff's Statement of Undisputed Facts, Exh. 1, ¶ 31–L).

## DISCUSSION

### I. Standard for Summary Judgment Pursuant to Rule 56.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

(Moskowitz Aff., ¶ 5). Similarly, there is a curious one-page excerpt of deposition testimony that makes reference to deception, but as to what exactly and on the part of whom is not clear at all. (Defendant's Opp. Br., Exh. B).

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (*en banc*), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). In deciding a motion for summary judgment, a court must view the facts in the light most favorable to the nonmoving party and must resolve any reasonable doubt as to the existence of a genuine issue of fact against the moving party. *See Continental Insurance Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982). The moving party has the burden of establishing that there exists no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The Supreme Court has stated that, in applying the criteria for granting summary judgment:

> the judge must ask ... not whether ... the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented. The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the [nonmovant] is entitled to a verdict....

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. (*Id.*)

Federal Rule 56(e) provides that once the moving party demonstrates adequate support for summary judgment, the non-moving party must set forth specific facts showing that there is genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. If the nonmovant fails to make a sufficient showing with respect to an element of its case on which it bears the ultimate burden of proof at trial, summary judgment should be granted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 321, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 329 (3d Cir.1995); *see also Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir.1993) (stating "[s]ummary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant...."). "If the evidence [submitted by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505.

## II. Plaintiff Centennial's Motion for Summary Judgment is Granted

■ From the outset, the Court observes that this action for declaratory judgment respecting a marine insurance contract was brought under the court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333. Marine insurance is insurance with a subject matter specifically related to the hazards encountered in maritime transportation. *See North American Specialty Insurance Co. v. Bader,* 58 F.Supp.2d 493, 496 (D.N.J.1999). Marine insurance contracts are governed by federal admiralty law when there is an established federal rule, and by state law when there is not. *See id.* at 497.

### A. Burdens of Proof

■ As indicated above, the burden of proof as to essential elements in this case is a key preliminary consideration in deciding the instant motion. Where the action is one for declaratory judgment, the issue of allocating the burden of proof is an elusive one. *See Fireman's Fund Insurance Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1174 (3d Cir.1976). In the instant case, plaintiff seeks a declaration that it is not liable on the Policy and defendant counterclaims seeking a reciprocal declaration. Were this case filed as a coercive claim, the insured would be the plaintiff and typically would bear the burden of proving that a loss occurred within the coverage of the insurance contract.[2] *See id.* at 1175–76; *Pittston Co. v. Allianz Ins. Co.*, 905 F.Supp. 1279, 1301 (D.N.J.1995) ("It is insured's burden to prove a loss covered by the terms of the policy.") An examination of the Third Circuit's oft-cited decision in *Fireman's Fund Insurance v. Videfreeze Corp.*, 540 F.2d 1171 (3d Cir. 1976), provides guidance on this difficult question.

In *Fireman's Fund Insurance*, the insurer filed an action seeking only a declaration of non-liability under a policy covering property damage caused by an earthquake. The main dispute between the parties was whether the loss occurred within the coverage terms (*i.e.*, whether it was caused by an earthquake). Defendant insured sought a counter-declaration that the loss was covered. The district court charged the insurer with the burden of proving the negative proposition that the damage was caused by something other than an earthquake. The Court of Appeals reversed, holding that despite the reversed positions of the parties in a dec-

laration judgment action the insured should bear the burden of proof on the affirmative issue that a loss occurred within the policy's coverage. *See id.* at 1176 ("Even though the insurer has initiated this declaratory judgment action and is titularly the plaintiff, we adhere to the fundamental rule that the risk of non-persuasion 'rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action.' ").

Here, plaintiff seeks a declaration of non-liability on the basis that Lithotech's claim is not of the type covered by the Policy. Lithotech counterclaims for a declaration that its loss is covered. As the record reflects, the essence of these claims is that Lithotech seeks—and Centennial seeks to avoid—coverage for a loss that arises from an alleged substitution of a particular printing press for one contracted for by a third-party client of Lithotech. Thus, Lithotech asserts the affirmative issue that the cause of the loss occurred within the operative duration and terms of coverage. Accordingly, under *Fireman's Fund Insurance*, Lithotech bears the burden of proving these elements.

### B. Coverage Under the Policy's "All Risks" Clause

■ Defendant argues for coverage under two clauses: the Insuring Conditions Clause and the Fraudulent Bills of Lading Clause ("FBOL clause"). The former insures "[a]gainst all risks of physical loss or damage from any external cause." Plaintiff has brought an adequately supported motion for summary judgment arguing that defendant's loss does not fall within

---

2. Once this is established, the insurer typically must demonstrate that the claim is completely within an exclusion. *See, e.g., Continental Ins. Co. v. Beecham, Inc.*, 836 F.Supp. 1027, 1042 (D.N.J.1993).

the coverage of this "all risks" clause. Accordingly, defendant must respond by setting forth facts demonstrating that there is a triable issue of coverage. *See* Fed. R.Civ.P. 56(e); *Fireman's Fund Insurance,* 540 F.2d at 1175–76.

Federal courts have held that such "all risks" policies cover all losses that are deemed fortuitous. *See In re Balfour MacLaine Int'l Ltd.,* 85 F.3d 68, 77 (2d Cir. 1996); *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 307 (2d Cir. 1987). "A loss is fortuitous unless it results from an *inherent defect,* ordinary wear and tear, or intentional misconduct of the insured." *(Id.)* (emphasis added). Thus, this definition recognizes that if a defect or problem with the insured property exists prior to the time at which coverage attaches, the insurer is not liable for that loss under an all risks policy. Coverage attaches under a marine shipping insurance policy when there is a commencement of transit. *See City Stores Co. v. Sun Insurance Co.,* 357 F.Supp. 1113 (S.D.N.Y.1972).

Here, Lithotech maintains that there was a substitution of the printing press and that the resultant loss falls within the scope of coverage. However, there is no evidence that any substitution occurred or—assuming one did occur—that such substitution occurred at or after the time transit of the press commenced. Moreover, by its own admission, Lithotech did not inspect the press before it was shipped. Thus, there is no evidence to indicate that a "proper" press ever existed, one that was free from pre-existing damage or inherent defect. All that Lithotech has demonstrated is that the press that was uncrated in the United States was not the kind of press the client had ordered. This does not begin to establish a triable issue on the necessary element of a loss within the terms of coverage. Nor can

Lithotech create a material issue by its speculative claims of substitution and vague references to "fire damage." As Rule 56(e) warns, the party opposing summary judgment may not rest on "mere allegations" but must set forth specific facts showing that there is a genuine issue for trial. Lithotech has not done so with respect to asserting coverage under the "all risks" provision.

### C. Coverage Under the Policy's FBOL Clause

█ Nor has Lithotech demonstrated that there is a triable material issue of fact as to coverage under the FBOL clause. Such a showing is necessary under Rule 56(e) in response to Centennial's properly supported motion for summary judgment on its claim that the FBOL clause by its terms does not extend coverage to defendant's loss. Defendant alleges that it suffered injury due to fraudulent bills of lading because the bill of lading identified the printing press being shipped from Indonesia as a 1986 Heidelberg printing press. Defendant's offered testimony indicates that the press delivered to the United States turned out not to be a 1986 Heidelberg but an earlier model. As a result, it is defendant's view that the bill of lading was fraudulent, and that the underlying fraud caused its loss within the terms of the FBOL coverage.

The Policy terms offer a logical starting point in assessing whether there is a material issue as to coverage under the FBOL clause. Of course, in examining the terms of the FBOL clause the Court is mindful of the fundamental maxim that "[w]here ambiguous, insurance contracts are to be strictly construed against the insurer." *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 761 (3d Cir.1985). In this case, the FBOL clause provides that:

This policy also covers *loss of or damage to the property insured* occasioned through the acceptance by the Insured or Insured's agent or customers or consignees or others of Fraudulent Bills of Lading or Shipping Receipts.

(Plaintiff's Statement of Undisputed Facts, Exh. 1, ¶ 31–L) (emphasis added). As plaintiff's opposition points out, there is important language restricting the scope of coverage under this clause. In particular, the phrase "loss of or damage to the property insured" limits the coverage significantly, requiring that losses sustained must be to the actual subject matter of the Policy in order to enjoy coverage.

An examination of the main case cited by Lithotech in support of its argument for coverage under the FBOL clause underscores the significance of this limiting language. In *Chemical Bank v. Affiliated FM Insurance Co.,* 815 F.Supp. 115 (S.D.N.Y.1993), banks brought an action under maritime insurance policies seeking to recover losses sustained when fraudulent documents concerning non-existent coffee shipments became the bases for extensions of credit. There, the FBOL clause covered "loss or damage occasioned through the acceptance by the Assured and/or their agents or shippers of fraudulent Bills of lading and/or shipping receipts and/or messenger receipts." (*Id.* at 118). The absence from this clause of any language limiting the scope of coverage to losses to the actual insured merchandise was indispensable to the court's determination that the FBOL clause covered the banks' losses. These losses were based on extensions of credit into which the non-existent shipments figured; thus, they were not losses arising directly from loss of or damage to the insured property. From the court's opinion, it is clear that the addition of limiting language such as that which is contained in the instant FBOL clause would have changed the result in favor of the insurer.

Plaintiff argues that the presence of the limiting terms constricts coverage to direct losses to the insured property. The Court agrees. This is the unambiguous import of the policy terms. Moreover, this construction logically follows from the likely policy ramifications to the insurance industry of the *Chemical Bank* decision. Thus, the Court determines that the limiting language in the instant clause must be taken to restrict coverage to direct losses to the insured property.

Defendant Lithotech has failed to advance specific facts that demonstrate a material issue of fact that any direct loss occurred to the insured property. Fundamentally, it appears that Lithotech seeks to establish coverage not for direct losses to the insured property but for those flowing from the lawsuit brought against it by its client for its failure to deliver a particular printing press as agreed. As such, the attenuated nature of Lithotech's claim is comparable to those made in *Chemical Bank;* however, as just discussed, Lithotech is constrained by a more restrictive FBOL clause than were the insureds in that case.

Moreover, even if it is cast as one for direct loss to the insured property, Lithotech's claim cannot survive summary judgment because it has failed to show any facts that would create a triable issue as to whether a direct loss to the insured property occurred. As discussed above, Lithotech has done no more than to allege that a substitution occurred between Indonesia and the United States while having admitted that the condition of the press prior to shipment was unknown to it because no inspection occurred on Lithotech's behalf. Under these circumstances, the lack of any specific facts demonstrating that an injury to the property occurred during shipment

is all the more significant in assessing Lithotech's burden under Rule 56(e).[3]

In light of defendant's failure to set forth specific facts to the contrary pursuant to Rule 56(e), the Court determines from plaintiff's adequately supported motion that there is no genuine issue of material fact as to coverage under the Policy. Accordingly, plaintiff is entitled to summary judgment on its claim for a declaration of non-liability from Lithotech's claims under this Policy.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted, and it is entitled to the declaratory relief it seeks. Defendant has no claim against plaintiff under the subject insurance Policy arising out of the shipment of the commercial printing press at issue here, and more particularly has no duty either to defend or indemnify Lithotech Sales, Inc. in the action *Litho 21 and WLINC, Inc. v. Milton Moskowitz, Litho Tech Sales, et al.,* Docket No. 98–cv–7692 pending in the Eastern District of New York.

---

**3.** Similarly, Lithotech has failed to show any facts that indicate that the bill of lading was fraudulent in fact. All that Lithotech has adduced on this point is that the bill of lading described a 1986 Heidelberg press and that this varies with Lithotech's expert's determination that the press that arrived in the United States ultimately proved to be a Heidelberg of an earlier vintage. Thus, there is no dispute that the bill of lading described a real printing press received into cargo in Indonesia and that a real press was in fact delivered to the United States. All Lithotech's evidence demonstrates is a narrow inaccuracy in the description of a particular feature of the press. Lithotech neither explains nor alleges how this inaccuracy translated into its loss or, relatedly, how it falls within the ambit of the FBOL clause. Indeed, vagueness as to the alleged cause of defendant's loss pervades the proffered affidavit and deposition testimony offered in opposition to this motion. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 ("If the evidence [submitted by the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted.").